UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

························································································
                                                          x
DRUMMOND COMPANY, INC. and                                :
DRUMMOND LTD.,                                            :
                                                          :
                             Petitioners,                 :
                                                          :        Case No. 1:21-mc-00859-AJN
                    v.                                    :
                                                          :        Hon. Alison J. Nathan
                                                          :
VICE MEDIA LLC,                                           :        **ORAL ARGUMENT
                                                          :        REQUESTED**
                             Respondent.                  :
                                                          :
························································································
                                                          x


**VICE MEDIA LLC'S MEMORANDUM OF LAW IN OPPOSITION TO
DRUMMOND'S MOTION TO COMPEL COMPLIANCE WITH RULE 45 SUBPOENA
OR, ALTERNATIVELY, TO TRANSFER MOTION**

DAVIS WRIGHT TREMAINE LLP
Rachel F. Strom
Raphael Holoszyc-Pimentel
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
rachelstrom@dwt.com
rhp@dwt.com

Alison Schary
1301 K Street, N.W., Suite 500
Washington, DC 20005
(202) 973-4248 Phone
alisonschary@dwt.com


*Attorneys for Respondent VICE Media LLC*

**<u>Table of Contents</u>**

I.   INTRODUCTION ................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................. 5

    A.  Relevant Facts from Drummond's U.S. Litigation ............................................ 5

    B.  VICE's Podcast *The Crisis* ............................................................................. 7

    C.  Ongoing Colombian Criminal Proceeding Against Drummond Executives ................... 10

    D.  Drummond's Subpoena to VICE ..................................................................... 11

III. ARGUMENT ....................................................................................................... 12

    A.  Drummond Cannot Overcome VICE's Qualified Privilege to Obtain Its Unpublished Reporting Materials ..................................................................... 12

        1.  Drummond Fails to Demonstrate that the Information It Seeks Is Not Reasonably Available from Other Sources ................................................. 13

        2.  Drummond Fails to Identify Any Information from the Outtakes "Of Likely Relevance to a Significant Issue" in its RICO Case .................................... 17

    B.  The Court Should Deny Drummond's Alternative Request to Transfer This Matter ....... 21

IV. CONCLUSION .................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baloco v. Drummond Co.*,
    767 F.3d 1229 (11th Cir. 2014) ............................................................5

*Bradosky v. Volkswagen of Am., Inc.*,
    No. M8–85 (SWK), 1988 WL 5433 (S.D.N.Y. Jan. 15, 1988) ...............................20

*Breaking Media, Inc. v. Jowers*,
    No. 21 MISC. 194 (KPF), 2021 WL 1299108  (S.D.N.Y. Apr. 7, 2021)...............4, 14, 16, 18

*Doe v. City of New York*,
    No. 15-CV-0117(AJN), 2018 WL 6095847 (S.D.N.Y. Nov. 21, 2018)................................15

*Est. of Klieman v. Palestinian Auth.*,
    293 F.R.D. 235 (D.D.C. 2013).............................................19

*Giuffre v. Maxwell*,
    221 F. Supp. 3d 472 (S.D.N.Y. 2016)...................................17

*Gonzales v. Nat'l Broad. Co.*,
    194 F.3d 29 (2d Cir. 1999)........................................ *passim*

*In re McCray, Richardson, Santana, Wise, and Salaam Litig.*,
    928 F. Supp. 2d 748 (S.D.N.Y. 2013).........................................14, 17, 19

*In re McCray, Richardson, Santana, Wise, and Salaam Litig.*,
    991 F. Supp. 2d 464 (S.D.N.Y. 2013)........................................14, 15, 20

*In re Parker*,
    No. 616CV966BKSTWD, 2019 WL 4233148 (N.D.N.Y. Sept. 6, 2019)........................14, 19

*Lebowitz v. City of New York*,
    948 F. Supp. 2d 392 (S.D.N.Y. 2013)..................................14

*Lima LS PLC v. Nassau Reinsurance Grp. Holdings, L.P.*,
    160 F. Supp. 3d 574 (S.D.N.Y. 2015)..............................21, 22

*Lonegan v. Hasty*,
    No. CV04-2743(NG)(VVP), 2008 WL 41445 (E.D.N.Y. 2008)...........................18

*New England Teamsters & Trucking Indus. Pension Fund v. N.Y. Times Co.*,
    No. 14 Misc. 59, 2014 WL 1567297 (S.D.N.Y. Apr. 17, 2014)..................................4, 16, 17

*Pugh v. Avis Rent A Car Sys., Inc.*,
  No. M8-85, 1997 WL 669876 (S.D.N.Y. Oct. 28, 1997) ....................................................5, 13

*SBA Communications Corp. v. Fractus, S.A.*,
   No. 19 Misc. 130 (ER), 2019 WL 4879333 (S.D.N.Y. Oct. 3, 2019) ....................................22

*Schoolcraft v. City of New York*,
  No. 10 CIV. 6005 RWS, 2014 WL 1621480 (S.D.N.Y. Apr. 22, 2014) ....................13, 14, 16

*Sikelianos v. City of N.Y.*,
  No. 05 Civ 7673, 2008 WL 2465120 (S.D.N.Y. June 18, 2008)............................................13

*Sokolow v. Palestine Liberation Org.*,
  No. 04 Civ. 397, 2012 WL 3871380 (S.D.N.Y. Sept. 6, 2012)..............................................18

*United States v. Burke*,
  700 F.2d 70 (2d Cir. 1983).....................................................................................................20

*United States v. Treacy*,
  639 F.3d 32 (2d Cir. 2011).....................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 45 *et seq*.............................................................................................1, 21, 22

VICE Media LLC ("VICE") submits this memorandum of law in opposition to the

motion of petitioners Drummond Company, Inc. and Drummond Ltd. (collectively,

"Drummond") to compel VICE's compliance with a third-party subpoena pursuant to Fed. R.

Civ. P. 45 or, alternatively, to transfer this matter to the Northern District of Alabama.

## I.      INTRODUCTION

By this action, Drummond seeks to compel VICE to turn over nearly 8 hours of

unpublished recordings of interviews with three sources for VICE's May 2021 investigative

podcast series, *The Crisis* (the "Podcast"), to support Drummond's ongoing defamation and civil

RICO suits against Terry Collingsworth, a U.S. lawyer, which are proceeding in the Northern

District of Alabama.

VICE's Podcast is a six-part deeply-reported investigation into the 2001 murders of three

coal miners and union leaders who worked for Drummond in Colombia.[1]  In particular, the

Podcast explores the complicated litigation history between Drummond and Collingsworth, who

has brought multiple, unsuccessful U.S. federal lawsuits against Drummond since 2007, alleging

Drummond's involvement in, or responsibility for, the murders.  *The Crisis* stresses that the

testimony of some of Collingsworth's key witnesses may be suspect, since the testimony

changed after these witnesses received payments from Collingsworth and his team.  Presley

Decl. Ex. 9 at 190-92, 201-03, 206-09.

The Podcast also recounts – which Drummond ignores in its motion – that as VICE was

wrapping up its reporting, Colombia's attorney general's office announced that it was pressing

charges against the former and current president of Drummond in Colombia.  Presley Decl. Ex.

---

[1] These materials will be referenced herein as the "Outtakes," and Drummond's motion to compel papers
will be referenced herein as "Mot." (ECF No. 2) and "Presley Decl." (ECF No. 3).

9, at 211, 225-27.  These executives are being charged with financing and promoting the paramilitaries that killed the three Drummond union leaders.  The Colombian Ministry of Justice released an official financial audit alleging that Drummond paid a man named Jamie Blanco 40 percent more than he was budgeted to work at Drummond while these Drummond executives likely knew Jamie Blanco was financing the paramilitaries.  *Id.* at 226.  Drummond told VICE, as reported in the Podcast, that it expects its executives to be exonerated at trial.  *Id.*

Drummond now wants to review VICE's full unpublished outtakes of its interviews with Collingsworth, as well as the outtakes from the interviews (conducted in Spanish) with two individuals in Colombia that are testifying against the Drummond executives in Colombia: Jamie Blanco and a witness named Juan Carlos Rojas.[2]

Drummond concedes, as it must, that to obtain these Outtakes it must overcome this Circuit's two-prong test for seeking journalists' unpublished reporting materials from a non-confidential source.  That is, Drummond must demonstrate that the materials contain information that is (1) "of likely relevance to a significant issue in the case" and (2) "not reasonably obtainable from other available sources."  *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 35-36 (2d Cir. 1999).  Drummond cannot come close to doing so.

***First***, Drummond does not even try to argue that the *information* it seeks is not reasonably available from other sources, as required by the second *Gonzales* prong – a failure that is fatal to its motion.  It simply claims that *these specific interviews* by VICE are not available elsewhere.  That is not what the law requires.  Nor could Drummond make such an argument that the *information itself* is not reasonably available: by Drummond's own account,

---

[2] Neither Blanco nor Rojas are parties to Drummond's RICO or defamation suits in the Northern District of Alabama.  *See* Declaration of Alison Schary ("Schary Decl.") Exs. 1 and 2.

and based on the record in its RICO and defamation suits, Drummond either already has the information it seeks or is actively engaged in obtaining it from alternative sources.  Unless and until it can demonstrate that it cannot obtain certain specific, relevant information through alternative means using the wide range of discovery tools available to it, Drummond is not entitled to rifle through VICE's privileged reporting materials.

**Second**, Drummond fails to explain how the two general topics it identifies as "significant" here – "the extent and content of the [Collingsworth and his witnesses'] communications with media outlets" about Drummond and "the scope, extent, and purpose of the [Collingsworth's] payments to witnesses" (Mot. at 19, 21) – require access to the Outtakes. Communications with VICE are not at issue in the RICO case, and Drummond concedes it already has ample evidence of Collingsworth's (and his witnesses') contacts with the media. Mot. at 20-21; *see also* Presley Decl. Ex. 1 (RICO Complaint) App'x E.  Indeed, the published Podcast itself – which VICE has offered to provide Drummond – is proof enough that Collingsworth, Rojas, and Blanco are continuing to speak to the media about this matter.

Drummond similarly cannot explain why it requires VICE's privileged newsgathering to prove the "scope, extent, and purpose" of Collingsworth's witness payments.  By its own account, there is no dispute Collingsworth paid witnesses in prior litigations against Drummond. Indeed, Collingsworth acknowledges as much in the published Podcast, which, again, VICE has offered to provide Drummond.  Moreover, Drummond already possesses detailed evidence about specific witness payments, and it is seeking additional records directly from U.S. and Colombian banks.  *See* Mot. at 4-13, 21-23; Presley Decl. Ex. 1 at App'x A-C; Presley Decl. Ex. 17, at 6; Schary Decl. Ex. 4.

Indeed, one cannot help but wonder if, through this motion, Drummond may be seeking to sift through VICE's reporting materials to get a look at how two key witnesses in the Colombian case are discussing Drummond and the murders, hopeful it might prove useful to their case – since two of the interviews it now seeks are with individuals who are reportedly testifying in that matter, but are not even parties to Drummond's defamation and RICO cases at issue here.  While VICE has no reason to believe the interviews would be relevant or discoverable in that matter either, if that is Drummond's aim, VICE fears that the disclosure of its unpublished interviews of two witnesses testifying in Colombia against the Drummond executives may endanger these witnesses and other vulnerable individuals in Colombia, including third parties mentioned in those Outtakes.  And those are precisely the type of fears that can be chilling on a newsroom like VICE.  VICE had a team of over two dozen journalists in five countries working to bring this sensitive story to listeners in the U.S., Columbia, and beyond.  The security concerns for their sources were always top of mind – and are all the more reason to reject Drummond's attempts to peruse VICE's unpublished interviews with its adversaries.

**_Finally_**, there are no "exceptional circumstances" that warrant transfer of this matter to the Northern District of Alabama over VICE's objection.  This Court routinely adjudicates motions seeking access to privileged reporting materials by New York-based media outlets, even where the underlying matter is proceeding in another jurisdiction.  *See, e.g., Breaking Media, Inc. v. Jowers,* No. 21 MISC. 194 (KPF), 2021 WL 1299108, at *1 (S.D.N.Y. Apr. 7, 2021) (quashing subpoena for nonconfidential press materials by defendant in case pending in W.D. Tex.); *New England Teamsters & Trucking Indus. Pension Fund v. N.Y. Times Co.*, No. 14 Misc. 59, 2014 WL 1567297, at *1 (S.D.N.Y. Apr. 17, 2014) (denying motion to compel non-

confidential press materials for case pending in M.D. Tenn.); *Pugh v. Avis Rent A Car Sys., Inc.*, No. M8-85, 1997 WL 669876, at *1 (S.D.N.Y. Oct. 28, 1997) (quashing subpoena for press materials for case pending in E.D.N.C.). Resolving this motion requires no specialized knowledge of the merits of the underlying litigation in Alabama; applying well-established law to Drummond's own presentation of the facts, Drummond fails to meet its burden under *Gonzales*.

Accordingly, VICE respectfully requests that the Court deny Drummond's motion to compel disclosure of VICE's privileged, unpublished reporting materials, and deny Drummond's alternative request to transfer this matter to the Northern District of Alabama.

## II.     FACTUAL BACKGROUND

### A.     Relevant Facts from Drummond's U.S. Litigation

Petitioner Drummond Company, Inc., through its subsidiary Drummond Ltd., operates a coal mine in Colombia. In 2001, paramilitaries murdered three coal miners at Drummond's mine who were leaders in the labor union. The murders sparked decades of litigation, which are still ongoing today.

Specifically here, U.S. lawyer Terry Collingsworth has brought multiple U.S. federal lawsuits against Drummond since 2007, alleging its involvement in or responsibility for the murders. Mot. at 2. Drummond has prevailed in each of these cases to date, generating a significant volume of discovery along the way. *See* Mot. at 3 (Drummond prevailed at summary judgment following "extensive discovery"); *see also Baloco v. Drummond Co.*, 767 F.3d 1229, 1239 (11th Cir. 2014) (affirming dismissal of one of Collingsworth's cases and noting "there has been a very large amount of discovery over a period of more than ten years in preceding related cases").

In 2011, Drummond sued Collingsworth and his former law firm for defamation over statements linking it to the murders.  In the course of its defamation suit, Drummond says, it discovered that "every single Colombian witness that offered letters rogatory testimony against Drummond in [Collingsworth's prior case] had been paid by Mr. Collingsworth" and his affiliates.  Mot. at 11.  Based on that discovery, Drummond filed a RICO suit in 2015 against Collingsworth and other individuals and entities who allegedly facilitated payments to witnesses. *Id.* at 11-12.  Blanco and Rojas are not parties to either of the Alabama federal cases, but they were witnesses in Collingsworth's cases.

Both the RICO suit and the defamation suit are ongoing in the Northern District of Alabama before the Honorable David R. Proctor.  Judge Proctor found that the crime-fraud exception applied to documents withheld by the Collingsworth defendants as privileged relating to the payments, and has ordered a special-master review of these documents for production in both cases, which is ongoing.  Mot. at 12-13.

By Drummond's own account, it has collected significant evidence in support of its RICO claims.  Drummond's motion cites documentary evidence and testimony identifying specific payments by the RICO defendants to individual witnesses, including Blanco and Rojas. Mot. at 6-8, 10-11.  Drummond's RICO complaint includes detailed appendices of individual witness payments (Presley Ex. 1 at App'x A-C), as well as allegedly fraudulent court submissions (*id.* App'x D) and statements to the media and other third parties (*id.* App'x E). And according to Drummond, Judge Proctor has already found, based on "indisputable evidence" and admissions by Collingsworth, that Collingsworth paid witnesses in the prior litigations against Drummond and then "lied to the court (and others) about the payments."  Mot. at 12-13.

The dockets in both cases reflect that no letters rogatory have been requested or issued seeking discovery from Blanco or Rojas.  Schary Decl. Exs. 1, 2.  In a joint submission identifying potential targets for discovery by letters rogatory, no party named Rojas is listed, and only the Collingsworth defendants (not Drummond) named Blanco.  *Id.* Ex. 3.  The only letters rogatory issued to date seek documents from three Colombian financial institutions relating to the witness payments.  *Id.*  Ex. 4.  The letters were issued in October 2021 and requested a response from the recipients by January 31, 2022.  *Id.*  In its motion to issue these three letters rogatory, Drummond stated that the bank records it was seeking "will bear directly on the scope, nature and extent of Defendants' admitted witness payments."  Schary Decl. Ex. 5 at 15.

## B.    VICE's Podcast *The Crisis*

VICE is a publisher of award-winning investigative journalism, including news articles, television documentaries, and podcasts.  Declaration of Kate Osborn dated February 4, 2022 ("Osborn Decl.") ¶ 3.  In March 2021, it published a six-episode investigative podcast called *The Crisis*, which explored the struggle over labor and natural resources that ultimately led to the deaths of three coal miners in 2001 amid Colombia's civil war.  *Id.* ¶ 4.

The Podcast explored in depth the murders of the three coal miners, who were union leaders, at the hands of right-wing paramilitary gunmen – and the complicated legal battles that unfolded over subsequent decades seeking to identify those responsible for the killings.  *Id.*  As the Podcast explains:

> What is a fact is that the paramilitary group in the area killed [the three union leaders]. No one is contesting that, not even the paramilitaries themselves. But there's no agreement about who planned the killings.
>
> There are two narratives being laid out: one, that the paramilitaries killed the union leaders after being asked to do so by Jaime Blanco; two, the paramilitaries killed the union leaders after being asked to do so by Jaime Blanco, potentially in coordination with other people working for Drummond, and that the money that paid for this came from Drummond.

Presley Decl. Ex. 9, at 209.  In order to ensure the Podcast would reach a local audience as well, the Podcast was also released in Spanish, under the title *Contra Natura*.  Osborn Decl. ¶ 5.  The Podcast was a finalist for the 2021 Gabo Prize – a highly prestigious journalism prize in Latin America awarded by the Gabo Foundation, an institution founded by Nobel Prize-winning writer Gabriel Garcia Marquez.  *Id.* ¶ 5, Ex. 2.

To produce the Podcast, executive producers Kate Osborn and Annie Aviles worked with a team of more than 15 reporters, editors, producers, and fact-checkers located in five countries. Over the course of more than a year, the VICE team conducted interviews in English and Spanish with sources located in multiple countries.  Osborn Decl. ¶ 6.  Reporters and hosts Ramón Campos, Agnes Walton, and Sayre Quevedo, all of whom speak Spanish, traveled to Colombia to interview Juan Carlos Rojas, who brought them to the site of the murders he witnessed in 2001, and to interview Jaime Blanco in the prison where he was, at the time, serving his sentence after being convicted for the murders.  The interviews with Mr. Blanco and with Mr. Rojas were both conducted in Spanish.  *Id.* ¶ 7.

VICE's reporters also interviewed Terry Collingsworth, the U.S. lawyer who has unsuccessfully brought multiple suits against Drummond relating to the murders, as well as Drummond's former chief of security, Jim Adkins.  *Id.* ¶ 8.  Drummond declined to make a representative available to VICE for an interview, but it provided comment in response to specific questions, which VICE included in the Podcast.  *Id.*

In addition to its own interviews, VICE's reporting team made significant use of publicly available court documents from the numerous suits between Drummond and Mr. Collingsworth, including recorded witness testimony, trial exhibits, and court rulings.  *Id.* ¶ 9.

While the targets of Drummond's subpoena – Collingsworth, Rojas, and Blanco – spoke on the record with VICE, they did so on the understanding that VICE appreciated the security risk in Colombia and would make editorial decisions accordingly. *Id.* ¶ 10. Both Rojas and Blanco reside in Colombia, where their personal safety and the safety of their families are at risk due to their involvement in these events. *Id.* Indeed, as explained on the Podcast itself, Rojas says that he still worries for his safety to this day. Presley Decl. Ex. 9, at 224-25. The unpublished outtakes also contain references to third parties in Colombia who may be endangered by disclosure. Mindful of these issues, VICE made numerous editorial decisions not to include certain details in order to protect third parties from potential danger in Colombia. Osborn Decl. ¶ 10.

The first episodes of the Podcast walk through the background of Colombia's civil war between right-wing paramilitaries and left-wing guerrilla forces, and the way that civil war impacted labor relations as union members were painted as guerrilla sympathizers and targeted by paramilitary forces. Through contemporaneous news coverage and interviews with Juan Carlos Rojas – one of the miners who witnessed the murder of a union member – as well as family members of the murdered union leaders, the Podcast describes events leading up to the murders, the killings, and their aftermath. Presley Decl. Ex. 9, at 4-46.

As the Podcast reports, the union and the victims' families brought a U.S. civil case against Drummond in 2007, alleging that the president of the company in Colombia paid paramilitaries to commit the murders. The third episode walks through that trial using recorded testimony and evidence introduced in court, and reports that Drummond prevailed at trial. *Id.* at 85-118. It includes an interview with Terry Collingsworth, the attorney who brought the suit, as

well as Jim Adkins, who discusses his belief that there were connections between the union and guerrillas – and starts pointing his figure at Jaime Blanco.

In Episode 5, the Podcast reports on a subsequent case brought unsuccessfully by Collingsworth against Drummond, using recorded witness testimony from the trial.  It also includes an interview with Jaime Blanco as well as testimonies from individuals who came forward as part of Colombia's peace process beginning in 2019.  *Id.* at 186-211.  The Podcast discusses Drummond's ongoing defamation case against Collingsworth and specifically reports about the Alabama federal court's finding that Collingsworth had made payments to witnesses including Jaime Blanco and that those payments were illegal.  *Id.* at 207.  The payments are never presented as a matter of dispute in the Podcast – Collingsworth admits that he provided the payments, which he characterized as "security assistance" and a "necessary evil to facilitat[e] the testimony to benefit my clients."  *Id.* at 208-09.

Finally, the Epilogue reports on the latest development in the decades-long saga: in December 2020, the Colombian government announced that it was charging the current and former presidents of Drummond in Colombia, Augusto Jimenez and Jose Miguel Linares, with financing and promoting the paramilitaries that killed the three Drummond mine union leaders.  *Id.* at 223-33.  The Colombian government alleges, among other things, that Blanco was paid 40 percent more by Drummond than what was budgeted for his services, that the money was used to finance the paramilitaries, and that Drummond executives likely knew about the plan to funnel money to the paramilitaries.  *Id.* at 226-27.  Juan Carlos Rojas says he is testifying in that case and is all the more concerned for his safety.  *Id.* at 225.

**C.     Ongoing Colombian Criminal Proceeding Against Drummond Executives**

Since the Podcast was released, it has been publicly reported that Jaime Blanco was granted early release from prison after he provided testimony to Colombia's transitional justice

body, the Special Jurisdiction for Peace against the Drummond executives (*Jurisdicción Especial para la Paz*, or JEP). Osborn Decl. Ex. 3. It has also been publicly reported that Blanco's testimony included allegations about Drummond's role in financing the paramilitaries, and that testimony and evidence he provided has been used by Colombian authorities in their ongoing criminal investigation of Drummond executives. Osborn Decl. Ex. 4.

Notably, Drummond's motion does not mention the ongoing Colombian criminal proceeding, or that Rojas and Blanco, whose unpublished interviews they are seeking, have reportedly provided testimony in that case.

### D.     Drummond's Subpoena to VICE

Drummond first issued a subpoena to VICE back in May 2021, which sought compliance in Florida, where VICE does not maintain an office. Drummond then reissued its subpoena to VICE in July 2021. The Subpoena was extremely broad, calling for essentially *all* of VICE's newsgathering materials for the Podcast. After months of back and forth, Drummond agreed to narrow its Subpoena and now seeks VICE's Outtakes for three interviews it conducted for the Podcast. Since May 2021, VICE's producers, reporters, and editors have spent countless hours on this matter that took them away from their reporting – trying to locate and review relevant documents. Osborn Decl. ¶ 15.

VICE has offered to provide an authenticated copy of the published Podcast as a response to Drummond's subpoena. However, VICE has serious concerns that being forced to turn over unpublished reporting materials in this case will chill its ability to continue reporting important stories, by damaging the trust it has built with sources and dissuading them from speaking with VICE's reporters. VICE is also concerned that Drummond's motion may be seeking to look through VICE's reporting materials for the ongoing Colombian criminal matter, where the disclosure of VICE's unpublished interviews with two witnesses testifying in that matter against

the Drummond executives may endanger these witnesses and other vulnerable individuals in

Colombia, including third parties mentioned in the unpublished outtakes.  Osborn Decl. ¶¶ 14,

15.

## III.    ARGUMENT

This Court should deny Drummond's request for unfettered access into VICE's

unpublished interviews with two witnesses that are currently testifying against Drummond

executives in Colombia, and a lawyer that has been one of Drummond's top adversaries for

years.  Drummond cannot overcome VICE's privilege for its non-confidential newsgathering

here because (1) Drummond can (and did) obtain this information from other sources and (2) the

information is, at best, cumulative of the mountains of evidence Drummond has cited in its

motion.

### A.    Drummond Cannot Overcome VICE's Qualified Privilege to Obtain Its Unpublished Reporting Materials

This Circuit "has long recognized the existence of a qualified privilege for journalistic

information." *Gonzales*, 194 F.3d at 32.  The privilege, which arises from the First Amendment

as well as federal common law, upholds a "paramount public interest in the maintenance of a

vigorous, aggressive and independent press capable of participating in robust, unfettered debate

over controversial matters." *Id.* at 35 (quoting *Baker v. F & F Inv.*, 470 F.2d 778, 782 (2d Cir.

1972)).  As the Second Circuit warned in *Gonzales*,

> If the parties to any lawsuit were free to subpoena the press at will, it would likely
> become standard operating procedure for those litigating against an entity that had
> been the subject of press attention to sift through press files in search of
> information supporting their claims.  . . . And permitting litigants unrestricted,
> court-enforced access to journalistic resources would risk the symbolic harm of
> making journalists appear to be an investigative arm of the judicial system, the
> government, or private parties.

194 F.3d at 35.  Thus, the privilege "seeks to prevent the unnecessary enmeshing of the press in litigation that arises from events they cover," *Schoolcraft v. City of New York*, No. 10 CIV. 6005 RWS, 2014 WL 1621480, at *2 (S.D.N.Y. Apr. 22, 2014), and to thwart "harassment and scrutiny by litigants seeking to conduct 'fishing expeditions' into nonbroadcast materials in the hope that some relevant information may turn up." *Pugh*, 1997 WL 669876, at *5.

VICE has asserted that the Outtakes are protected by the qualified privilege for non-confidential press materials, and Drummond concedes the Outtakes are subject to the privilege. Mot. at 16.  Accordingly, Drummond must satisfy the two-prong test set out in *Gonzales* to overcome VICE's qualified privilege and obtain disclosure.  Under this test, disclosure cannot be compelled unless Drummond demonstrates that the information it seeks is (1) "of likely relevance to a significant issue in the case" and (2) "not reasonably obtainable from other available sources." *Gonzales*, 194 F.3d at 35-36.  While "this standard is less exacting than that which applies to confidential materials, a litigant seeking nonconfidential materials will not be granted unfettered access to 'sift through [journalists] files in search of information supporting [his] claims." *Sikelianos v. City of N.Y.*, No. 05 Civ. 7673, 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008) (quoting *Gonzales*, 194 F.3d at 35).

Because Drummond fails to satisfy its burden on *either* prong – each of which is independently fatal to its motion – the Court should deny its motion.

### 1.    Drummond Fails to Demonstrate that the Information It Seeks Is Not Reasonably Available from Other Sources

Although Drummond's motion begins by addressing the second *Gonzales* prong, Drummond does not even attempt to satisfy the actual *Gonzales* requirements.  That prong requires Drummond to show that the information it seeks is "not reasonably obtainable from other available sources." *Gonzales*, 194 F.3d at 36.  Drummond simply asserts that it cannot

13

obtain *VICE's specific recordings* from any other source.  Mot. at 18.  But the relevant legal

inquiry is whether the *information* sought from a reporter's newsgathering materials – not the

exact embodiment of the newsgathering materials themselves – is available from another

source.  *See In re Parker*, No. 616CV966BKSTWD, 2019 WL 4233148, at *5 (N.D.N.Y. Sept.

6, 2019) (denying disclosure of reporter's unpublished interview recordings where plaintiff failed

to show that sought-after information about interviewee's knowledge of certain facts was

unavailable from other sources, including depositions of the interviewee and other relevant

witnesses); *see also In re McCray, Richardson, Santana, Wise, and Salaam Litig.*, 928 F. Supp.

2d 748, 758 (S.D.N.Y. 2013) ("Establishing unavailability will require a showing that [the

movant] attempted to obtain the *information* from another source, or cannot obtain the

*information* from another source.") (emphasis added), *aff'd,* 991 F. Supp. 2d 464 (S.D.N.Y.

2013).

     To satisfy this prong, Drummond would have to demonstrate that it has "ma[d]e

reasonable efforts through discovery to obtain the information from alternative sources."

*Schoolcraft*, 2014 WL 1621480, at *3  (emphasis added).  Having failed to make any showing of

alternate discovery undertaken to obtain the information before seeking it from the press, its

motion fails as a matter of law.  *See, e.g.*, *Breaking Media*, 2021 WL 1299108, at *5 (quashing

subpoena for non-confidential press materials where proponent "fail[ed] to provide even the

most basic information regarding efforts to obtain this information from alternate sources");

*Lebowitz v. City of New York*, 948 F. Supp. 2d 392, 395–96 (S.D.N.Y. 2013) ("the City, having

failed almost completely to pursue the testimony of numerous non-reporter witnesses to the

events that Moynihan witnessed, can hardly bootstrap that failure into an argument for breaking

the reporter's privilege"); *Parker*, 2019 WL 4233148, at *5 ("Plaintiff has failed to demonstrate

the information he seeks in his subpoena is unavailable from another source."). Dismissal of its motion is thus warranted on this ground alone.[3]

Nor would Drummond be able to make such a showing. It is unclear why Drummond would require VICE's *unpublished* outtakes to show that Collingsworth, Blanco, and Rojas made statements to the media suggesting Drummond's complicity in the murders. By Drummond's own account, that information is available from the published Podcast. Mot. at 19-20. And the "extent and content" of various individuals' communications with the media is discoverable simply by collecting published statements in media outlets – which is exactly what Drummond has done, assembling an entire appendix to its RICO complaint consisting of statements to the media and third parties on which it bases its claims. Presley Decl. Ex. 1 (RICO Compl.) at App'x E. VICE and the Podcast do not appear anywhere in that appendix – not surprisingly, since the RICO complaint predates the Podcast by six years.

Drummond would fare no better trying to show that information about the "scope, extent, and purpose" of the RICO defendants' payments to witnesses is unavailable from sources besides the Outtakes. Drummond has full access to Collingsworth's sworn testimony and documents because he is a defendant in Drummond's RICO and defamation suits. As for Blanco and Rojas, the dockets in the RICO and defamation cases reveal no effort by Drummond to seek testimony or documents from either individual through letters rogatory. Schary Decl. Exs. 1 and 2. Courts routinely deny access to privileged press materials where, as here, the movant can depose the relevant party or witness, or seek discovery from them directly. *See, e.g.*, *In re*

---

[3] To the extent that Drummond raises new arguments on this prong for the first time in its reply, VICE respectfully requests that the Court either strike those arguments or permit VICE to file a sur-reply. *See Doe v. City of New York*, No. 15-CV-0117(AJN), 2018 WL 6095847, at *8 (S.D.N.Y. Nov. 21, 2018) (courts "routinely conclude that arguments not made until a reply brief are waived").

*McCray, Richardson, Santana, Wise, Salaam Litig.*, 991 F. Supp. 2d 464, 471 (S.D.N.Y. 2013)
("[T]here is no case law supporting Defendants' allegation that information is not 'reasonably
obtainable elsewhere' when Plaintiffs in the case are available for deposition."); *Breaking Media*,
2021 WL 1299108, at *5 (quashing subpoena for nonconfidential reporting materials where
proponent could obtain the information by deposing a party witness); *New England Teamsters*,
2014 WL 1567297, at *5 (declining to overcome qualified journalist's privilege where party
failed to provide "any deposition testimony . . . or interrogatory responses from any [of litigant's]
witnesses" to establish that subpoenaed information was not reasonably available elsewhere).[4]

      Further, Drummond's motion demonstrates that it already *has* specific evidence of
payments. Mot. at 6-8, 10-11. The individuals and entities that Drummond alleges facilitated
the payments to Blanco and Rojas – Ivan Otero, Albert van Bilderbeek, Collingsworth's former
law firm, the NGO International Rights Advocates – are all defendants in its RICO suit (*see*
Schary Decl. Ex. 2), and like Collingsworth, they are therefore easily available for direct
discovery. And a special master in the defamation and RICO cases is currently reviewing
privileged communications relating to the witness payments for potential production pursuant to
the crime-fraud exception. Mot. at 12-13. Moreover, Drummond already requested financial
records directly from three Colombian banks relating to the witness payments by letters rogatory
– which by its own account "will bear directly on the scope, nature and extent of Defendants'
admitted witness payments." Schary Decl. Ex. 5, at 15. *See also* Presley Decl. Ex. 17, at 6
(Drummond sought financial records relating to alleged witness payments from Florida bank by

---

[4] *Compare United States v. Treacy*, 639 F.3d 32, 43 (2d Cir. 2011) ("Because Treacy possessed an
absolute Fifth Amendment right not to testify himself, Forelle was the only potential witness who could
confirm that Treacy had made the statements quoted in the article"); *Schoolcraft*, 2014 WL 1621480, at
*6 ("City Defendants seek the ten-page statement only after deposition of the Plaintiff and Plaintiff's
statement that he is not in possession of the document.").

third-party subpoena).  In sum, given that Drummond can, has, and is already in the process of obtaining information about these payments from multiple alternative sources, it could not possibly satisfy the second *Gonzales* prong even if it tried.

> **2.    Drummond Fails to Identify Any Information from the Outtakes "Of Likely Relevance to a Significant Issue" in its RICO Case**

Drummond also fails to satisfy the first *Gonzales* prong, which requires it to demonstrate that the Outtakes are of "likely relevance" to a "significant issue" in its RICO case.  "The relevancy requirement is not met if the information sought in the subpoena is merely duplicative or serving a 'solely cumulative purpose.'"  *New England Teamsters*, 2014 WL 1567297, at *3 (quoting *United States v. Burke*, 700 F.2d 70, 78 (2d Cir. 1983)).  Further, courts have routinely held that "impeachment material is ordinarily not critical or necessary to the maintenance or defense of a claim," *McCray,* 928 F. Supp. 2d at 758 (citing *In re Nat'l Broad. Co.*, 79 F.3d 346, 352 (2d Cir. 1996)) because "in almost any civil lawsuit, the credibility of a party or witness will be a 'central issue,'" *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 479 (S.D.N.Y. 2016).

Here, Drummond goes to great lengths to tout the mountain of evidence it has already accumulated to prove its case, including documentary evidence, sworn testimony, and factual findings in its favor by the Court.  But Drummond's confidence in the merits of the underlying suits only undercuts its motion here, since it cannot explain what significant, relevant information it seeks from the Outtakes that is materially different from what it has already collected – or even materially different from statements in the published Podcast.

Drummond claims that the Outtakes are relevant to two "significant issues" in its RICO case: (1) "the extent and content of the [RICO defendants] (and their witnesses') communications with media outlets like VICE that relate to Drummond" (Mot. at 19) and (2) **"**the scope, extent, and purpose of the Defendants' payments to witnesses, including the

$120,000 that Collingsworth arranged to be paid to Blanco by Albert Van Bilderbeek" (Mot. at 21). But Drummond has not "shown that the communications covered by [its] subpoena[] relate[s] in any way to [those] issue[s]"; and without that required nexus, the subpoena is simply "an effort 'to sift through press files in search of information supporting their claims,' precisely the type of excursion condemned in *Gonzales*." *Lonegan v. Hasty*, No. CV04-2743(NG)(VVP), 2008 WL 41445, at *3 (E.D.N.Y. 2008) (quoting *Gonzales*, 194 F.3d at 35).

As to the first "significant issue," VICE is not mentioned anywhere in Drummond's RICO complaint, including in Drummond's detailed appendix of 57 alleged communications with media and other third parties "in furtherance of the Enterprise's multifaceted extortionate scheme." *See* Presley Decl. Ex. 1 at App'x E. The reason for this is obvious: the Podcast was released in May 2021, six years *after* Drummond filed its RICO suit. Thus, VICE's interviews for the Podcast cannot possibly be relevant to proving the "extrajudicial media campaign" described in the RICO suit, or to any other claim or defense in that action. *See Breaking Media, Inc.*, 2021 WL 1299108, at *4 (quashing subpoena for reporting materials purportedly relevant to demonstrate that party tried "to influence the outcome of the case through improper channels by garnering [media] coverage of the case that portrayed Respondent and his counsel in a negative light," since this issue was "completely irrelevant to any claim or defense" in underlying trade-secret case).

The dubious relevance of VICE's interviews to Drummond's claims readily distinguishes the cases relied on by Drummond. *See* Mot. at 17 & n.8. In those cases, the subpoenaed interviews, which discussed Fatah's links to the Al-Aqsa Martyrs Brigades, bore directly on the critical issue on which liability hinged. *See Sokolow v. Palestine Liberation Org.*, No. 04 Civ. 397, 2012 WL 3871380, at *2 (S.D.N.Y. Sept. 6, 2012) ("If Fatah, which is part of the PLO, is

connected to Al-Aqsa's activities, then the Plaintiffs can obtain relief from the Defendants."); *Est. of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 242 (D.D.C. 2013) ("the requested information goes to the heart of plaintiffs' theory of liability").  By contrast, VICE's interviews do not even relate to Drummond's pleaded claims (which never once mention VICE), let alone go to the heart of them.

Nor does Drummond explain why VICE's *unpublished* outtakes are relevant to this purported "significant issue."  If Drummond is simply trying to prove that Collingsworth, Blanco and Rojas spoke to the media – although it is unclear how this would be relevant, other than fishing for new claims – it can use the published Podcast.  *See McCray*, 928 F. Supp. 2d at 758 (denying defendants access to unpublished outtakes of interview with plaintiffs where edited portions included in the film were sufficient for proposed purpose); *Parker*,, 2019 WL 4233148, at *4 ("To the extent Plaintiff seeks these recordings merely because they may support a *new* claim against Mr. McNamara, the Court finds he cannot overcome the qualified reporters' privilege. Importantly, the information must be relevant to an *existing* issue in the lawsuit – to provide otherwise would impermissibly transform members of the press into an investigative arm of litigants.").  To the extent it believes these three individuals made statements to VICE that were *not* included in the Podcast but are similar to the purported misrepresentations in Appendix E to its RICO complaint, that evidence would be the very definition of cumulative.[5]

Similarly, Drummond fails to identify any non-cumulative evidence relevant to the "scope, extent, and purpose" of the witness payments made by Collingsworth and his associates that it believes will be found in the Outtakes.  As set forth above, there is no dispute that Blanco

---

[5] And since neither Blanco nor Rojas is a defendant in the RICO case, it is even less clear how their unpublished interview outtakes could be relevant to proving that the RICO defendants "leveraged extrajudicial media campaigns as part of their scheme to extort money from Drummond."  Mot. at 19-20.

and other witnesses were paid, and that the payments were arranged by Collingsworth.  *See* Mot. at 6-8, 10-11.  Drummond's RICO complaint includes appendices listing the dates, amounts, parties, and transmittal methods of specific payments.  Drummond is in the process of obtaining documents relating to the payments that were previously withheld as privileged through the special master's crime-fraud review (Mot. at 12-13); it has subpoenaed banks in Florida (*see* Presley Decl. Ex. 17, at 6); and it is seeking documents about the "scope, nature and extent" of the witness payments by letters rogatory from Colombian banks (Schary Decl. Ex. 5).  And given that Collingsworth acknowledges these payments in the published Podcast, it is unclear (and Drummond does not explain) what it is seeking from the Outtakes that would not be cumulative or duplicative.  Indeed, the portion of Episode 5 that Drummond quotes in its motion simply recounts allegations and findings from Drummond's own defamation and RICO cases.  *See* Mot. at 22-23; *compare* Presley Ex. 9 at 207-08 *with* Presley Decl. Ex. 1 (RICO Compl.) ¶¶ 94-97. Similarly, Drummond describes Collingsworth's statements in the Podcast as "the same story [he] offered" in the underlying litigation "through the testimony of three 'experts' on witness payments."  Mot. at 22 & n.9.

Given this record, it is clear that Drummond "already ha[s] the information [it] seek[s], and any statements contained in the outtakes would be cumulative."  *McCray*, 991 F. Supp. 2d at 471.  *See also, e.g., Burke,* 700 F.2d at 78 (in light of existing evidence, district court properly concluded that subpoenaed Sports Illustrated work papers would be cumulative); *Bradosky v. Volkswagen of Am., Inc.,* No. M8–85 (SWK), 1988 WL 5433, at *3 (S.D.N.Y. Jan. 15, 1988) ("even assuming that the specific statements contained in the outtakes would be useful to defendants . . . their usefulness would only be cumulative").  Its motion should therefore be denied.

**B.     The Court Should Deny Drummond's Alternative Request to Transfer This Matter**

In the alternative to seeking relief from this Court, Drummond requests that this matter be transferred to the Northern District of Alabama.  VICE does not consent to the requested transfer, and this Court should deny Drummond's request.

Rule 45(f) provides that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).  If such consent or exceptional circumstances exist, "Rule 45 merely permits transfer but does not require it."  *Lima LS PLC v. Nassau Reinsurance Grp. Holdings, L.P.*, 160 F. Supp. 3d 574, 579 (S.D.N.Y. 2015).  As the advisory committee notes explain, "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions."  Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment, subdiv. (f).  Thus, transfer to the issuing court is warranted only in exceptional circumstances "to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."  *Id.*  Even when those interests are present, "[t]ransfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion."  *Id.*

Because VICE does not consent to transfer, Drummond "bears the burden of showing that [exceptional] circumstances are present."  *Id*.  No such circumstances exist here.  Adjudicating this motion in New York will not "disrupt[] the issuing court's management of the underlying litigation" because that court has not "already ruled on issues presented by the

21

motion," namely, the reporter's privilege.  *See Id.*.  Because the issuing court "has not issued any rulings on this particular issue . . . the likelihood of inconsistent or duplicative rulings on this issue is low."  *Lima*, 160 F. Supp. 3d at 580 (rejecting transfer even where the issuing court "may be more knowledgeable regarding discovery in the underlying matter").  Nor is the issue of the reporter's privilege "likely to arise in discovery in many districts" and warrant centralization in the Northern District of Alabama.  Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment, subdiv. (f).  Indeed, *none* of the Rule 45(f) transfer orders submitted by Drummond involved the reporter's privilege.  *See* Presley Decl. Ex. 17, at 2-3 (attorney work product); *id.* at 8-9 (banking records); *id.* at 15 (attorney work product).

Drummond's only cited case, *SBA Communications Corp. v. Fractus, S.A.*, is wholly inapposite because in that case – unlike this one – the target of the subpoena *consented* to (and in fact requested) the transfer.  No. 19 Misc. 130 (ER), 2019 WL 4879333, at *2 (S.D.N.Y. Oct. 3, 2019).  Similarly, in all of the Rule 45(f) transfer orders presented by Drummond (Presley Decl. Ex. 17), the subpoena target either consented to transfer or raised no objection.

In sum, there are no exceptional circumstances that warrant transfer of this subpoena over VICE's objection.  Moreover, resolving this motion does not requires any specialized knowledge of the underlying litigation because Drummond's motion is deficient on its face: it fails to make any showing whatsoever on the second *Gonzales* prong, and it does not identify any relevant, significant evidence it seeks from VICE's outtakes that is materially different from the copious evidence that, by its own account, it has already accumulated through years of discovery.

## IV.    CONCLUSION

For the reasons above, VICE respectfully requests that the Court deny Drummond's

motion to compel compliance with its Rule 45 subpoena, and deny Drummond's alternative

motion to transfer this matter.

Dated:  February 8, 2022
        New York, New York

                                  Respectfully submitted,

                                  DAVIS WRIGHT TREMAINE LLP
                                  By: */s/ Rachel F. Strom*
                                      Rachel F. Strom
                                      Raphael Holoszyc-Pimentel
                                  1251 Avenue of the Americas, 21st Floor
                                  New York, NY  10020-1104
                                  (212) 489-8230 Phone
                                  (212) 489-8340 Fax
                                  rachelstrom@dwt.com
                                  rhp@dwt.com

                                  Alison Schary
                                  1301 K Street, N.W., Suite 500
                                  Washington, DC 20005
                                  (202) 973-4248 Phone
                                  (202) 973-4499 Fax
                                  alisonschary@dwt.com

                                  *Attorneys for Respondent VICE Media LLC*